WILLIAM EDWARDS v. NASH COUNTY BOARD OF COMMISSIONERS.

(Filed 22 February, 1922.)

1. **Constitutional Law—Statutes—Taxation—Ratifying Acts—Retroactive Acts—Vested Rights.**

   The Legislature, having the power to authorize a county to levy a special road tax for the purpose of coöperating in the construction of State or National highways in the county, may validate, by retroactive legislation, an attempt of the municipal authorities to levy this tax after the expiration of the period fixed in the prior act, when in the ratifying act there is no attempt to legalize prior legislation, or a prior invalid seizure or sale of property thereunder, or to interfere with vested rights.

2. **Constitutional Law—Statutes—Taxation—Reading of Bill—Substitute Bill—Separate Days—Roads and Highways.**

   Where a bill, authorizing a levy of taxes for road purposes, has been read, referred to a committee, and the committee has recommended a substitute, resulting in the tabling of the original bill and the passing of the substitute on two separate days in that branch of legislation, and otherwise conforming to the requirements of Const., Art. II, sec. 14, as to the "aye" and "no" vote, etc., and its passing on separate days, etc., in both branches of legislation, the substitute is to be regarded, in the contemplation of the Constitution, as an amendment to the original bill introduced, and the act may not successfully be questioned as not having passed on the several separate days required of a bill of this character.

APPEAL from an order dissolving a restraining order, heard by *Allen,* J., at chambers, 20 December, 1921, from NASH.

Civil action permanently to enjoin defendant from levying road tax in Nash County, and from increasing road tax in Manning's Township

in said county. On 1 December, 1921, a temporary restraining order was granted, and on 20 December it was dissolved. Plaintiff appealed. There were two alleged causes of action:

1. Plaintiff contends that in 1921 defendant levied a tax of ten cents on each $100 in value of property in Nash County, which was unconstitutional for the reason that Public-Local Laws 1919, ch. 496, under which the levy was made, did not authorize the defendant to levy this tax after 1920. The defendant contends that the levy of 1921 was validated by the General Assembly at the special session of 1921, H. B. 92, S. B. 735. The plaintiff insists that the act of 1921 is inoperative because the General Assembly could not "validate a nullity."

2. The plaintiff contends, in the second place, that in Manning's Township the defendant levied a tax in excess of the authority granted by Public-Local Laws 1913, ch. 220. The defendant says that the increased rate was authorized by Public-Local Laws 1919, ch. 245; and plaintiff insists that the latter act was not passed in accordance with Art. II, sec. 14, of the Constitution. This statement is sufficient to show the contentions of the parties.

*W. M. Person for plaintiff.*
*F. S. Spruill for defendant.*

ADAMS, J. The appeal involves the legal integrity or soundness of the two propositions on which the plaintiff relies. The first is this: Whatever the legislative intent may have been, the act passed by the General Assembly at the special session of 1921 is not legally sufficient to validate the levy which was made by the defendant for that year by virtue of chapter 496 of the Public-Local Laws of 1919. And the second: The act (Public-Local Laws 1919, ch. 245) amending chapter 220 of the Public-Local Laws of 1913 was not passed as required by Art. II, sec. 14, of the Constitution of North Carolina. We are of opinion that neither proposition can be maintained.

Chapter 496, section 3, of the Public-Local Laws of 1919, authorized the defendant, in certain contingencies which are not material here, to levy for coöperation in the construction of State or National highways in the county a special tax for the years 1919 and 1920; and the defendant, under the impression that the act provided for a permanent fund, in July, 1921, levied the tax referred to. For the purpose of curing the defect and ratifying the levy, the General Assembly, at the special session of 1921, passed an act, the title of which is "An act to amend and supplement chapter 496 of the Public-Local Laws of 1919, and to ratify and validate the action of the county commissioners of Nash

County in levying a tax thereunder for the public roads of said county." Section 3 provided that the action of the defendant in levying a tax of ten cents on the $100 valuation of property and of thirty cents on each taxable poll for the year 1921, in pursuance of the provisions of chapter 496, and for the purpose therein expressed as amended, should in all respects be approved, ratified, and validated. The plaintiff contends that since the defendant had no authority to make the levy at the time, the act of 1921 is only an ineffective effort to impart vital force to a levy that was utterly void. But the authorities apparently are uniform in holding that where there is no attempt to legalize prior litigation, or a prior invalid seizure or sale of property, or to interfere with vested rights, a statute enacted to confirm or validate a defective assessment of taxes is not in violation of the organic law, and is, therefore, effective for the purpose intended. This conclusion rests upon the recognized and accepted doctrine that a retrospective law, curing defects in acts that have been done, or authorizing or confirming the exercise of powers, is valid in those cases in which the Legislature originally had authority to confer the power or to authorize the act. The General Assembly unquestionably had original authority to confer the right to levy a tax for the year 1921, in like manner as it had done for the two preceding years. It may be noted that there is no suggestion that chapter 496, heretofore referred to, was not passed in strict compliance with Art. II, sec. 14, of the Constitution. *Belo v. Comrs.,* 76 N. C., 489; *Leak v. Gay,* 107 N. C., 479; *Scott v. Springs,* 132 N. C., 549; *Anderson v. Wilkins,* 142 N. C., 159; *Wharton v. Greensboro,* 149 N. C., 63; *Highway Com. v. Webb,* 152 N. C., 711; *Erskine v. Nelson,* 27 L. R. A., 696, and note; *Bulkeley v. Williams,* 48 L. R. A., 465, and note, p. 476; 12 C. J., 955, 1095.

In the second proposition the plaintiff assails the constitutionality of chapter 245 of the Public-Local Laws of 1919. "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the Journal." Const., Art. II, sec. 14. Against the constitutionality of the act referred to the plaintiff urges his contention that the bill did not pass the three several readings on three different days. This bill (H. B. 92) was introduced in the House of Representatives

on 16 January, 1919, and referred to the appropriate committee; and on 19 February the committee reported the bill unfavorably, and recommended the adoption of a substitute. On 20 February, H. B. 92 was reached on the calendar, and "the substitute was adopted and the bill passed its second reading." On the day following, "the substitute for H. B. 92 passed its third reading." On each reading the yeas and nays were entered in the Journal. The bill, or substitute, was then sent to the Senate, and passed by that body in conformity with the constitutional requirements; and on 3 March it was signed by the presiding officer of each house. It may now be observed that the plaintiff's specific and dominant objection is that when H. B. 92 was tabled the substitute became an entirely new bill, that the adoption of the substitute was its first reading, and that the first and the second readings of the new bill occurred on the same day. We need not travel abroad in search of precedent to show that this position cannot be sustained. In *Brown v. Comrs.*, 173 N. C., 599, it appears that the bill which was there under discussion passed the first reading in the House of Representatives, and was referred to a committee, who reported a substitute for the original measure. *Brown, J.*, said: "The substitute was only an amendment to the original bill, which had already passed first reading on 22 January. Consequently, when the substitute passed second and third readings on different days, and the ayes and noes were duly entered on both said readings, the requirements of Art. II, sec. 14, of the Constitution were duly complied with." And in 25 R. C. L., 880, it is said: "Even a substitute bill which is so germane to the original bill as to be a proper substitute need not be read three times."

In this action the only defendant is the board of commissioners. The plaintiff sought to enjoin the levy of taxes four months after the levy had been completed and two months after the tax books had been delivered to the collector. *Harrison v. Bryan,* 148 N. C., 315; *Moore v. Monument Co.,* 166 N. C., 211; *Kilpatrick v. Harvey,* 170 N. C., 668. There is no phase of the record which entitles the plaintiff to an injunction, and accordingly the judgment is

Affirmed.