W. M. BLANTON v. THE BOARD OF COMMISSIONERS OF McDOWELL COUNTY.

*Constitution—Contract—Novation—Pleading—Mandamus—Taxation.*

1. A complaint in an action for *mandamus* to compel the levying of a tax to pay a debt, which fails to set forth the debt specifically for which the relief is demanded, is defective.

2. Where a county, prior to the adoption of the present Constitution, contracted a debt for which it issued bonds, and since that Constitution went into effect the Board of Commissioners issued other bonds in exchange for the first, under an act of the General Assembly which provided that such " bonds shall be deemed and held to be a continuation of the liability created by the county " for the original bonds : *Held*, That all the securities and remedies which attached to the bonds first issued entered into and became a part of the new obligation, and that the limitations upon the rate of taxation contained in the Constitution of 1868 did not apply to them.*

· This is a CIVIL ACTION which was tried before *Clark, J.*, at Fall Term, 1888, of McDOWELL Superior Court.

Under and by virtue of section 47 of chapter 228 of the act incorporating " The Western North Carolina Railroad Company," passed at the session of the General Assembly held in 1854–'55, the county of McDowell, with the approval of a majority of the voters, subscribed for $50,000 of its capital stock, and in payment therefor issued its coupon bonds in that amount, running twenty years and bearing six per cent. per annum interest, payable semi-annually.

The bonds were issued in 1867, and at the session held in 1883 an act was passed " to empower the Board of County Commissioners of McDowell County to compromise, commute and settle the debt of McDowell County"—chapter 204—by which the Commissioners were authorized to issue other coupon bonds, not exceeding in amount the said sum of

---

*MERRIMON, J., did not sit upon the hearing of this appeal.

$50,000; and, in section 3, it is declared that "the bonds so issued therefor may have expressed upon their face that they are issued in the place and instead of such contract or liability created and existing as aforesaid (prior to the year 1868), and are not liable to the limitation of taxation provided for in section six of article five of the Constitution."

At the session held in 1887 an amendatory act was passed entitled "An act to empower the Board of County Commissioners of McDowell County to settle the bonded debt of McDowell County," by the first section of which authority was given them "to issue coupon bonds of the denominations of not less than one hundred nor more than one thousand dollars, to be made payable at any period not more than thirty years from the date of said bonds, and bearing such interest as may be agreed upon by said Board of County Commissioners of McDowell County and the holders or owners of the bonds issued by said county of McDowell in aid of the Western North Carolina Railroad Company, and not exceeding six per cent. per annum, to be paid semi-annually; and said bonds shall be signed by the chairman of said Board of County Commissioners of McDowell County and countersigned by the clerk of said board."

The second section repeals the section of the same number in the previous enactment, and substitutes therefor the following:

"The bonds so issued under this act may be exchanged with the holders and owners of said bonds heretofore issued in aid of said Western North Carolina Railroad Company under an act of the General Assembly of North Carolina, passed at its session of 1856 and 1857, chapter 68, and when so issued shall be deemed and held to be a continuation of the liability created by said county under the provision of said act."

Under the power thus conferred the plaintiff has surrendered bonds of the original issue held by him, and accepted

others issued in exchange, the coupons due on which the commissioners refuse to provide for by levying a tax in excess of the constitutional limitation of 66⅔ cents on the $100 valuation of taxable property, all of which is required to meet the expenses and liabilities of the county. So no funds are raised to meet the accrued interest on the bonds, the Commissioners, in answer to the plaintiff's demand for such additional levy, alleging a want of power to do so.

This is the question raised by the demurrer, which, upon the hearing, was overruled, and the commissioners declining to answer, whereupon judgment was rendered awarding the writ of *mandamus* and requiring the commissioners to make the necessary further assessments to meet the plaintiff's debt, and from this judgment they appealed.

No counsel for the plaintiff.
*Mr. R. H. Battle,* for the defendants.

SMITH, C. J. (after stating the case.) It is perfectly manifest that in the issue of the new bonds in place of those that had matured, it was not intended to surrender any security which the creditor had for the debt by a novation of the one for the other, but to maintain the indebtedness as essentially one and the same in the different forms assumed. The security possessed in the capacity of the taxing power, when necessary to provide means to pay the obligations, to go beyond the limits fixed in the Constitution, and repeatedly asserted as incident to obligations entered into before the adoption of the Constitution (*Clifton* v. *Wynne,* 80 N. C., 145, and numerous cases therein referred to), was clearly intended to be preserved and to attach to those given in renewal.

It is held in *Hyman* v. *Devereux,* 63 N. C., 624, that the taking up a bond secured by a mortgage upon real and personal estate, and giving a new one for the residue due on

the first, was not an extinguishment of the debt unless so intended, and that it still retained the mortgage security. The principle was again asserted in *Kidder* v. *McIlhenny*, 81 N. C., 123. The ruling in *Clifton* v. *Wynne* and the several previous adjudications therein referred to, proceeds upon an interpretation of the Federal Constitution, which forbids a State, by any act impairing the obligations of contracts, to withdraw from the Legislature, by restraints upon the taxing powers, the ability and means possessed when the contract was entered into and essential to a fulfillment of its requirements. The mere renewed recognition of a subsisting liability in the issue of a new bond, declared in the very act which authorizes the issue "to be a continuation of the liability" resting upon the county, cannot, upon any second reasoning, be deemed the creation of a new debt in the sense of its falling under the restrictions applicable to new contracts of indebtedness, with the deprivation of the pre-existent means of enforcing performance by the levy of the necessary taxes.

The only case called to our attention in the argument for defendants, *Wilson* v. *Patton,* 87 N. C., 318, supposed to militate against the view taken, simply decides that a creditor taking a new in place of an old note and reducing the former to a judgment, upon which he sues out execution, loses his right to proceed against the debtor's exemption under the latter, since he must enforce the contract sued on, with the incidents attaching to it when it was made under the then existing laws. It is not, therefore, pertinent to the present inquiry.

Another specification in the demurrer, is the omission to allege in the complaint that the question of issuing of the new bonds was submitted to the voters of the county in pursuance of section 7, article 7, of the Constitution, and was sanctioned by them.

But, as we have already said, this and other sections limiting the exercise of the taxing power have reference to the contracting of debts, the pledging of municipal faith, the loan of municipal credit and the levying and collecting of taxes after they become operative, and not to antecedent obligations, or the use of the means necessary for their discharge. *Street* v. *Commissioners of Craven*, 70 N. C., 644; *Brothers* v. *Commissioners of Currituck*, Ib., 726, and other cases to the same effect.

Our attention has been called to *Katzenberger* v. *Aberdeen*, 121 U. S., 172, where the validity of an act of Mississippi, whose Constitution contains a clause in terms very similar to that (art. 7, sec. 7) in our own, was considered.

In this case the city of Aberdeen had issued bonds in payment for shares subscribed to the New Orleans, Jackson and Great Northern Railroad Company, under an act of the Legislature which authorized the subscription but not the issue of bonds in payment therefor. Since the adoption of the new Constitution containing the restraining clause which required any county, city or town, before becoming a stockholder in, or lending its credit to, any company, association or corporation, to obtain the assent to the proposal of two-thirds of the qualified voters therein. (Art. 12, sec. 14.) The Legislature passed what was intended to be a validating or curative act, which attempted to legalize, ratify and confirm all bonds not made in violation of the State Constitution and issued to the said railroad, to which a different name had been given, without requiring the sanction of a popular vote of two-thirds. The objection to the bonds lay in the want of power in said city to issue them.

The language of the Chief Justice delivering the opinion is as follows: " The bonds in the present case, when issued, were unauthorized and void, so that the only question is whether the curative statute has made them good. The

objection to them is not that they were issued irregularly, but that there was no power to issue them at all.  They are to be made good, if at all, not by waiving irregularities in the execution of an old power, but by the creation of a new one.  Clearly, therefore, if the Legislature had no constitutional authority to grant the new power, a statute passed for that purpose could not have the effect of validating the old bonds."

The facts in this case are wholly unlike those in the case before us ; the differences being too marked to need being pointed out.

In our opinion none of the grounds of the demurrer are tenable, and it was properly overruled.  But the demurrer fails to point out other serious defects in the complaint, among which is the failure to insert any definite debt to be provided for by a specific mandate, and for this and other defects which may perhaps be remedied by amendment in the Court below, the case must be remanded, in doing which, however, we have deemed it proper to give our opinion upon the matters involved.

Remanded.