S. N. BOYCE, on BEHALF OF HIMSELF AND ALL OTHER CITIZENS AND TAX-
PAYERS OF THE CITY OF GASTONIA, WHO MAY DESIRE TO JOIN HIM IN
THIS ACTION AGAINST CITY OF GASTONIA AND PIEDMONT & NORTH-
ERN RAILWAY COMPANY, v. CITY OF GASTONIA AND PIEDMONT
& NORTHERN RAILWAY COMPANY.

(Filed 26 February, 1947.)

1. Municipal Corporations § 26—

Municipal corporations have statutory authority to grant franchises for
public utilities upon reasonable terms for a period not exceeding sixty
years with power to renew at the expiration of that period. G. S., 160-2.

2. Contracts § 8—

The laws existing at the time and place of a contract form a part of it.

3. Municipal Corporations § 26—

Where a franchise granted by a municipality fails to stipulate a term,
the statutory term of sixty years will be read into the contract as a part
thereof. G. S., 160-2.

4. Municipal Corporations § 29: Constitutional Law § 23—

A franchise to construct and operate a street railway over designated
streets is not a mere license but is a property right which may not be
taken away except by due process of law.

5. Municipal Corporations § 29—

A provision in a franchise for a street railway that the grantee should
save the city harmless from all damages or loss on account of anything
growing out of the construction and operation of the said railway cannot
be construed as a reservation of right in the city to revoke the franchise
at will.

139

6. **Same: Municipal Corporations § 41: Constitutional Law § 17—Contract of city to remove tracks of public utility in consideration of abandonment of franchise, in order to improve street, is for necessary expense and valid.**

The State Highway Commission agreed to appropriate a sum of money for the improvement of a city street upon condition that tracks and facilities of a street railway company be removed therefrom. The railway company was operating under a franchise having twenty years before its expiration, which provided that the railway company should save the city harmless from any damage resulting from the construction of its tracks. The city entered into a contract with the railway company providing that in consideration of abandonment of its franchise along said street the city would acquire for it an alternate right of way and would remove the tracks from the street. The court found that the amounts to be expended by the city under the contract are substantially less than the loss which would be sustained by the railway company. *Held:* The provision to save the city harmless does not give it power to revoke the franchise at will, and the contention that the railway company would be liable under this clause for the loss to the city of the appropriation by the Highway Commission in the event the tracks were not removed, and that therefore the funds to be expended by the city were without consideration and would constitute a special emolument not in consideration of public service, is untenable. Constitution of N. C., Art. I, Sec. 7.

7. **Eminent Domain § 5—**

A provision in a contract by a city to acquire for a public utility a right of way of a designated width with such additional width as in the judgment of the railroad company would be required for cuts and fills delegates to the railway company only authority to say what additional width will be required to take care of proper slopes of cuts and fills, which is a matter of engineering rather than a delegation of authority, and is valid.

DENNY, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Alley, J.,* at December Term, 1946, of GASTON.

Civil action to enjoin defendant city from spending public funds derived from taxation or other sources in carrying out and performing its part of a contract with defendant Railway Company, whereby in consideration of said Railway Company agreeing to surrender and abandon its franchise right to continue to operate electric trains and cars, along Franklin Avenue in said city, and to the removal of its tracks and facilities from said avenue, the city has agreed to acquire and transfer to the Railway Company a part of an alternate right of way so as to enable the Railway Company to reach its present freight station and terminal facilities in said city without operating along said avenue—entered into in connection with the city's undertaking to widen and improve Franklin Avenue.

When the cause came on for hearing in Superior Court, all the parties waived a jury trial, and agreed that the court should find the facts, and determine the case on its merits. After hearing the pleadings and affidavits, and argument of counsel for plaintiff and for defendants, and upon facts admitted in the pleadings, the court finds facts, pertinent to questions involved on this appeal, substantially as follows:

1. On 10 September, 1908, the Mayor and Board of Aldermen of the City of Gastonia, by ordinance and resolution duly adopted, granted unto W. S. Lee and L. C. Harrison, their successors, lessees and assigns a franchise and right "to own, construct, equip, maintain and operate a line or lines of street railway, run by electricity or other motive power" for the transportation of passengers and freight, with incidental rights, all as specifically set forth therein, upon certain conditions and provisos, among others:

"(D) Said W. S. Lee and L. C. Harrison, their heirs, lessees, and assigns, shall be liable to compensate the said city of Gastonia against, and save it harmless from, all damages, or loss that said city may suffer on account of anything that shall grow out of the construction or operation of said railway . . .

"(G) That this ordinance shall take effect from and after its acceptance by the said W. S. Lee and L. C. Harrison, which acceptance shall be filed with the Clerk of said city of Gastonia."

The said franchise, through assignments, has been duly transferred to, and is now owned by the defendant Railway Company,—a common carrier of freight and passengers.

2. Defendant, Railway Company, acting under and pursuant to said franchise, has invested large amounts of money in constructing railway tracks, an overhead trolley system, and other necessary and appropriate appliances and facilities along Franklin Avenue in the city of Gastonia for a distance of approximately three miles, and in constructing sidetracks from its tracks on said avenue to numerous industries located adjacent thereto, and for many years has conducted and carried on a freight and passenger service over its tracks located on said avenue, and sidetracks leading therefrom, and derived, and is now deriving substantial revenues from such business.

3. At the time said franchise was granted by the city of Gastonia to W. S. Lee and L. C. Harrison, and at the time the tracks and other facilities of defendant Railway Company were constructed over and along Franklin Avenue, there was very little vehicular and other traffic over said avenue as compared with the traffic thereover in recent years and at the present time. And for some years after the construction of said tracks, travel over the avenue by the general public was not materially interfered with by reason of the operation of cars and trains of said Railway Company over and along said avenue; but in recent years

Franklin Avenue has become and is now one of the busiest streets in the city of Gastonia and one of the busiest highways in the State, with almost constant stream of vehicular and other traveling traffic at all hours of the day and part of the night, by members of the public.

4. The city of Gastonia has duly undertaken the project of widening, re-surfacing and improving said Franklin Avenue; and in order to improve same so as properly and adequately to provide for the use thereof by the general public, including the general public of the city, in traveling over and along said avenue, it is necessary and essential that the tracks and other facilities of defendant Railway Company be removed therefrom, and that said railway company surrender and abandon its right to continue to operate over and along said avenue for the remainder of the term of its franchise.

5. In connection with the project, and for the purpose of widening, and improving said Franklin Avenue, the North Carolina State Highway and Public Works Commission has agreed to appropriate to the city $750,000 upon the condition that the tracks and other facilities of defendant Railway Company be removed therefrom, and that said Railway Company surrender and abandon its right to continue to operate its trains and cars over and along said avenue for the remainder of the term of its franchise, in order thereby to eliminate the highway hazards incident to such operation.

6. On 14 October, 1946, the defendant City entered into a contract with the defendant Railway Company by which in consideration of the city acquiring and vesting in the Railway Company, its successors and assigns, title to new rights of way "at least twenty (20) feet in width, together with such additional width as may, in the judgment of the Railway Company, be required for cuts and fills, and shall be located approximately as shown on the blueprint" attached thereto, for the relocation of the Railway Company's line of railway so as to enable it to reach its present freight station and terminal facilities in said city without having to operate along Franklin Avenue, all as set forth therein, the Railway Company will construct its line of railway along said new right of way, and upon its completion, as therein set forth, will abandon all operations along Franklin Avenue, except crossing switch tracks for purpose of serving industries, and, with consent and approval of such State and Federal agencies as are required, will permit the city to remove as a part of the improvement of Franklin Avenue the tracks and other equipment of the Railway Company now located along said avenue,— the tracks and equipment so removed to be turned over and delivered to the Railway Company.

7. The removal of the Railway Company's tracks and facilities from Franklin Avenue and the surrender and abandonment of its right to operate over and along said avenue are necessary and essential parts of

the city's project to widen and improve said avenue. And the funds to be expended by the city, under said contract of 14 October, 1946, unless it be restrained therefrom, will be expended by it in consideration of the surrender and abandonment by the Railway Company of its right to continue to operate its trains and cars over and along Franklin Avenue and the removal of the Railway Company's tracks and other facilities from said avenue, and same will be expended by the city as a necessary municipal expense of the improvement of said avenue.

8. The amounts to be so expended by the city "are very substantially less than the loss which will be sustained by said Piedmont & Northern Railway Company on account of the removal of its tracks and facilities from Franklin Avenue and on account of the surrender and abandonment by said Railway Company of its right to continue to operate over and along said Franklin Avenue for the remainder of the term of its franchise and are substantially less than the amount which the city would in all probability be required to pay said Railway Company if the city should undertake by means of legal proceedings to require the removal of said tracks and the discontinuance of the Railway Company's right to continue to operate over and along said avenue."

Upon the foregoing facts, the court concluded and held as a matter of law: "That the City of Gastonia had the authority to enter into said agreement of October 14, 1946, with the Piedmont & Northern Railway Company, and has the authority to carry out and perform its part of said agreement, and that the expenditures of funds, to be expended by the City of Gastonia under and pursuant to said agreement, will be valid and legal as a necessary municipal expense of said City for the widening and improvement of said Franklin Avenue."

The court thereupon entered judgment denying the prayer of plaintiff for a restraining order, and dismissed the action at cost of plaintiff. · · ·

To the conclusion of law as set forth in the foregoing judgment and to entry of the judgment plaintiff excepted and appeals to Supreme Court and assigns error.

*Bulwinkle & Howard and S. B. Dolley for plaintiff, appellant.*

*Ernest R. Warren and James B. Garland for the City of Gastonia, appellee.*

*W. S. O'B. Robinson, Jr., and W. B. McGuire, Jr., for Piedmont & Northern Railway Company, appellee.*

WINBORNE, J. Appellant in brief filed in this Court concedes that: "It is well settled in this State that construction, maintenance and improvement of streets is a necessary expense for municipalities," and "that it is immaterial what 'medium of exchange' is used in paying for said improvement as long as the same can be reduced to a money value."

Thereupon, appellant so conceding challenges the authority of the city of Gastonia to carry out and perform its agreement of 14 October, 1946, upon two grounds:

(1) That since it is found as a fact that the North Carolina State Highway and Public Works Commission has agreed to appropriate a sum of money for the widening and improving of Franklin Avenue in the city of Gastonia, but only upon condition that the tracks and other facilities of said Railway Company be removed therefrom, and that its franchise be surrendered and abandoned, in so far as it relates to said avenue, the city will lose such sum of money if the condition be not met; that such loss comes within the purview of the clause within the franchise that "the holder thereof shall be liable to compensate the said city of Gastonia against, and save it harmless from, all damages or loss that said city may suffer on account of anything that should grow out of the construction and operation of said railway"; that, hence, the payment of the expense of removing the tracks and of buying a new right of way is a responsibility assumed by defendant Railway Company as assignee of the franchise; and that, therefore, when the city undertakes to bear such expense, it is granting to the Railway Company a special emolument, not in consideration of public service, in violation of Article I, Section 7, of the North Carolina Constitution.

Such construction, we think, is somewhat strained.

In this connection the General Assembly of North Carolina has authorized cities and towns "to grant upon reasonable terms franchises for public utilities,—such grants not to exceed the period of sixty years, unless renewed at the end of the period granted." G. S., 160-2. This authority as so written became effective 11 March, 1907, and was in effect on the date when the franchise under consideration was granted. See P. L. 1907, Chapter 978.

The laws existing at the time and place of a contract form a part of it. See *Nash v. Bd. Comm.,* 211 N. C., 301, 190 S. E., 475; *Bank v. Town of Bryson City,* 213 N. C., 165, 195 S. E., 398; *Abernethy v. Ins. Co.,* 213 N. C., 23, 195 S. E., 20; *Spain v. Hines,* 214 N. C., 432, 200 S. E., 25; *Rostan v. Huggins,* 216 N. C., 386, 5 S. E. (2d), 162, 126 A. L. R., 410; *Dunn v. Swanson,* 217 N. C., 279, 7 S. E. (2d), 563; *Barker v. Palmer,* 217 N. C., 519, 8 S. E. (2d), 610; *Motsinger v. Perryman,* 218 N. C., 15, 9 S. E. (2d), 511; *Bank v. Derby,* 218 N. C., 653, 12 S. E. (2d), 260; *Spearman v. Burial Assn.,* 225 N. C., 185, 33 S. E. (2d), 895, 161 A. L. R., 1297.

Moreover, as stated in 38 Am. Jur., 227, Municipal Corporation, Section 542, "The franchise of a public service corporation or other grantee, granted by a municipality, expires at the end of the specified time where the charter of the municipal corporation expressly provides that all franchises and privileges granted by it shall be limited to a

specified number of years. Such a limitation is as much a part of the franchise as if it were expressly included therein. Hence, although the provisions of a municipal ordinance granting a franchise, where taken by themselves, indicate an estate in perpetuity, the grant must be deemed to be one for years where the municipal charter expressly declared that all franchises shall be limited to a specified term of years from the granting thereof." See *Denver v. N. Y. Tr. Co.*, 229 U. S., 123, 33 S. Ct., 657, 57 L. Ed., 1101.

Applying these principles to case in hand, it would seem that the franchise now owned by defendant Railway Company would be for a term of sixty years from the granting thereof, 10 September, 1908, and that it has now more than twenty years to run.

Furthermore, this Court in construing the statute G. S., 160-2, held in the case of *Railway Company v. Asheville*, 109 N. C., 688, 14 S. E., 316, that after a city, by ordinance, has granted a right to construct a street railway line over certain streets, it cannot by subsequent ordinance arbitrarily annul such license. Indeed, the grant of such right is not a mere license, but a property right protected by the Constitution from arbitrary revocation or destruction, and may not be taken except by due process of law. 38 Am. Jur., 217, Municipal Corporations, Sec. 536-7. To like effect are decisions of the U. S. Supreme Court in *Owensboro v. Cumberland Tel. & Tel. Co.*, 230 U. S., 58, 57 L. Ed., 1389; *Boise Artesian H & C Water Co. v. Boise City*, 230 U. S., 84, 57 L. Ed., 1400.

Hence, it may not be said with reason that the parties intended the indemnity clause in the franchise as a reservation of right in the city to revoke the franchise at will and without due process of law. In fact, appellees forcefully contend that the expense to be incurred does not arise out of an exercise of right under the franchise, but out of the abandonment and extinction of those rights, and is the price which the city shall pay for their abandonment and extinction. The Court finds that the amounts to be expended by the city of Gastonia pursuant to said agreement are very substantially less than the loss which will be sustained by the defendant Railway Company.

(2) Appellant next contends that the provision in the contract of 14 October, 1946, relating to the width of the new rights of way constitute an unlawful delegation of authority by the city to the Railway Company. The only authority delegated is to say what additional width will be required to take care of proper slopes of cuts and fills. This is more nearly an engineering matter than a delegation of authority. The contention is without merit.

The burden is on the appellant to show error. On this record he has failed to do so. Hence, the judgment below is

Affirmed.

DENNY, J., took no part in the consideration or decision of this case.